# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| TAYLOR CAVETTE, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | Case No. |
| *Plaintiff*, | ) ) | COMPLAINT – CLASS ACTION |
| v. | ) ) | JURY DEMAND |
| FORD MOTOR CO., a Delaware corporation, | ) ) | |
| *Defendant*. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Taylor Cavette, brings this class action suit against Defendant, Ford Motor Company ("Defendant" or "Ford"), on her own behalf and on behalf of a class of other individuals who purchased Ford Explorer vehicles manufactured and/or sold by Defendant, to obtain relief for the serious defect in the vehicles' aluminum hoods, which has resulted in premature corrosion to the vehicles' hood sections as well as unsightly bubbling and damage to the overlaying exterior paint (the "Corrosion Defect"). Despite having knowledge of the Corrosion Defect for almost two decades, Defendant has failed to disclose it to consumers, and has also refused to provide necessary repairs to Explorer owners who have experienced the Corrosion Defect's effects on their vehicles. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

## JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because (1) at least one member of the putative class is a citizen of a state different from any Defendant,

(2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (3) none of the exceptions under that subsection apply to the instant action.

2.      This Court has personal jurisdiction over Defendant because Defendant has ongoing and systematic contacts with the state of Tennessee, and conducts business in this District.

3.      Venue is proper in this District because Defendant transacts business in this District, and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

4.      Plaintiff Taylor Cavette is a natural person and a citizen of the state of Tennessee.

5.      Defendant, Ford Motor Co., is a Delaware corporation with its principal place of business in Dearborn, Michigan. Defendant designs, manufactures, markets, distributes, supplies, services, repairs, sells, and leases passenger vehicles under the Ford brand, including the class of vehicle purchased by Plaintiff, throughout the country and in this District.

## FACTUAL ALLEGATIONS

6.      Defendant has produced Ford Explorers since the 1991 model year.

7.      Of late, Defendant's Ford Explorer marketing materials and brochures have touted the model's structural strength. For example, Defendant's 2011 Explorer marketing brochure claimed: "Capability: 2011 Explorer has a body/frame that's lighter yet stronger than before."

8.      Defendant's 2014 and 2015 Explorer brochures repeated that same "built Ford tough" mantra: "Capability: A strong structure with advanced materials and technology serves as the foundation for impressive on-and off-road capability."

9.     What Defendant has failed to communicate to prospective Ford Explorer buyers, however, is that its decision to move to a lighter vehicle frame has come at a significant price for Explorer owners.

### Defendant's Unresolved Aluminum Body Panel Corrosion

10.     Upon information and belief, Defendant began installing aluminum panels into the frames of its vehicles in or about the year 2000. Specifically, Defendant began installing aluminum panels into its Ford Expedition models in or about 2000, its Ford Explorer models in or about 2002, and its Ford Mustang models in or about 2005.

11.     Defendant replaced heavier steel hoods – the section of the frame covering the engine – with lighter aluminum panels in order to reduce vehicle weight and increase fuel efficiency.

12.     However, Defendant's aluminum hoods carry an inherent, latent defect: they quickly corrode and cause their overlaying paint layer to bubble, peel, and/or blister.

13.     Defendant has been aware of this Corrosion Defect for over a decade. Since 2004, Defendant has issued numerous Technical Service Bulletins ("TSBs") – which are recommended steps and procedures for repairing its vehicles – identifying to its service technicians the aluminum panels as a source of corrosion. For example, on December 27, 2004, Defendant issued TSB 04-25-1 ("2004 TSB"), applicable to Ford Explorers from model years 2000-2005. In the 2004 TSB, Defendant stated:

> Some vehicles may exhibit a bubbling or blistering under the paint on aluminum body parts. This is due to iron contamination of the aluminum panel . . . Ford's Scientific Research Laboratory has performed a number of tests on vehicle body parts returned for corrosion related concerns. Testing has revealed that the aluminum corrosion was caused by iron particles working their way into the aluminum body part, prior to it being painted.

14.     Within a mere two years, on December 11, 2006, Ford reissued this same warning about the Corrosion Defect to its service technicians in TSB 06-25-15 ("2006 TSB") – titled "ALUMINUM BODY PANELS—CORROSION—SERVICE TIP" – which applied to Ford Explorers from model years 2002–2007. Defendant intended for the 2006 TSB to supersede the 2004 TSB, and repeated the same concerns about the Corrosion Defect:

> Ford's Scientific Research Laboratory has performed a number of tests on vehicle body parts returned for corrosion related concerns. Testing has revealed that the aluminum corrosion was caused by iron particles working their way into the aluminum body part, prior to it being painted.

15.     Ten years later, Defendant still had not developed an answer for the Corrosion Defect. On February 26, 2016, Defendant issued a *third* TSB on the same problem. TSB 16-0028 ("2016 TSB") – titled "Aluminum Panel Corrosion" – covered Ford Explorers from model years 2002-2016:

> **ISSUE**
> Some 2000 and newer Ford, Lincoln and Mercury vehicles equipped with aluminum body panels may exhibit corrosion concerns appearing as bubbled and/or peeling paint with or without accompanying white dust. Panel replacement is not required.

16.     On August 23, 2017, Defendant issued its *fourth* bulletin on the same issue – TSB 17-0062 ("2017 TSB") – which covered 2000-2017 Explorers. The 2017 TSB finally directed Ford repair technicians to replace the entire corroding aluminum panel.

17.     Ford's corroding aluminum problem and the Corrosion Defect remain unresolved. Just this year, on February 6, 2019, Ford issued its most recent (its *fifth*) TSB addressing the Corrosion Defect – TSB 17-0062 ("2019 TSB") – which supersedes all prior TSBs on the issue and repeats almost verbatim the same concerns from the 2004 TSB:

> **Issue**:  Some 2000 and newer Ford, Lincoln and Mercury vehicles equipped with aluminum body panels may exhibit corrosion concerns appearing as bubbled

and/or peeling paint with or without accompanying white dust. Panel replacement is recommended.

18.     Though the multiple TSBs clearly evidence Defendant's knowledge that certain of its models are plagued by the Corrosion Defect, Defendant has continued to market, distribute, and sell vehicles containing aluminum body panels vulnerable to the Corrosion Defect.

### *Consumer Complaints*

19.     Many people across the United States have experienced the Corrosion Defect firsthand, a fact that is revealed quite plainly by even a cursory internet search. For example, the number one defect in 2012 Ford Explorers reported to CarComplaints.com, an online forum dedicated to exposing automotive defect patterns, is rust bubbles on the hood. The second most common complaint is cracked paint on the hood:



(https://www.carcomplaints.com/Ford/Explorer/2012/)

20.     The number one defect reported in 2013 Ford Explorers is bubbling paint on the hood, followed by rust bubbles on the hood:



(https://www.carcomplaints.com/Ford/Explorer/2013/).

21.     The number one defect reported in 2014 Ford Explorers is bubbling paint:



(https://www.carcomplaints.com/Ford/Explorer/2014/).

22.     Owners of 2015 Ford Explorers have noticed the same corrosion defect and experienced Defendant's refusal to address the issue:



(https://www.carcomplaints.com/Ford/Explorer/2015/body_paint/paint_flaking_on_hood.shtml).

23.     2016 Explorer owners have reported that Defendant has still refused to cover corrosion damage at no cost:



(https://www.fordforum.com/forum/ford-explorer-20/2016-explorer-peeling-paint-hood-38810/).

### *Defendant's New Vehicle Warranties*

24.    As with its other vehicles, each new Ford Explorer comes with a "New Vehicle Limited Warranty" that provides bumper-to-bumper coverage for a period of 36 months or 36,000 miles, whichever occurs earlier.

25.    Defendant's new vehicle warranty contains a two-year extended coverage provision for defects relating to body panel corrosion ("Extended Corrosion Warranty"), but Defendant has purposefully limited coverage so that it applies only if a body panel "perforates," which means that it corrodes through completely:

> Your vehicles' body sheet metal panels are covered for an extended Corrosion Coverage Period, which lasts for five years, regardless of miles driven. The extended warranty coverage **only applies if a body sheet metal panel becomes perforated** due to corrosion during normal use due to a manufacturing defect in factory-supplied materials or factory workmanship.

26.    However, the problem with Defendant's Extended Corrosion Warranty is that it is *impossible* for aluminum body panels to perforate—a fact known to Defendant for years.

27.    Indeed, in 2013 and 2014 Defendant's representatives provided deposition testimony in litigation concerning several Ford Mustang models – which also contain aluminum body panels – that, although they were aware that Ford's aluminim body panels experience corrosion, they had never seen Ford aluminum body panels perforate through completely.

28.     Even though Defendant knew in 2013, and likely much earlier given the several TSBs addressing aluminum corrosion, that its Extended Corrosion Warranty could never actually be invoked, it did not revise its corrosion warranty until 2016.

29.     For model years after 2016, Ford's corrosion warranty was revised to specifically address aluminum corrosion, and now states:

> Your vehicle's body sheet metal panels are covered for an extended Corrosion Coverage Period, which lasts for five years, regardless of miles driven. The extended warranty coverage only applies if a body sheet metal panel becomes perforated due to corrosion during normal use due to a manufacturing defect in factory-supplied materials or factory workmanship. **If aluminum body panels have corrosion or rust damage, and the damage is not the result of abnormal usage, vehicle accident, customer actions and/or extreme environmental conditions, the corrosion or rust damage repairs are covered for 5 years, unlimited miles.**

30.     However, as described above, despite the 2016 revision to its corrosion warranty, Ford continues to deny corrosion warranty claims for 2015-and-earlier model Ford vehicles.

### *Defendant's PremiumCARE Extended Service Plan*

31.     Whenever consumers purchase a Ford vehicle, they are encouraged to also separately purchase one of Defendant's Extended Service Plans ("ESPs"). Defendant's ESPs are service contracts that allow consumers to pay an amount up front in exchange for the ability to receive service repairs in the future for free, after paying a deductible.

32.     Indeed, Defendant advertises its ESPs as "100% backed by Ford Motor Company" and represents that its ESPs take "the risk out of vehicle ownership" by addressing "unexpected expenses or surprises":



(https://fordprotect.ford.com/extended-service-plan).

33.     Defendant offers multiple different ESPs that differ in price and coverage, but Defendant uses a standard registration form for all of its ESPs. Defendant's standard registration form requests the owner's name, address, contact information, and Vehicle Identification Number.

34.     Notably, Defendant's standard ESP registration form references certain "terms and conditions," but does not actually include them with the registration form.

35.     Instead of providing clear and conspicuous ESP terms and conditions, on information and belief, Defendant directs its sales agents to provide ESP customers with two-sided brochures specific to the particular ESP that the customer purchases.

36.     For example, the front side of Defendant's brochure for its PremiumCARE ESP – the most expensive and comprehensive of the ESPs – states that it "covers the parts and labor to repair thousands of key components – engine, transmission, steering, brakes, front suspension, electrical and more . . . Failure of covered components due to defects in materials and workmanship and normal wear and tear are included. **With Ford ESP PremiumCARE, it's covered**." (emphasis in original).

37.     While Defendant's PremiumCARE ESP brochure touts its expansive coverage of 1,000+ vehicle parts (though it does not provide a complete list), it also includes a list, located at

the bottom of the backside of the brochure, and in fine print smaller than the brochure's other text, of vehicle parts that are not covered.

38.     This list of uncovered parts is expansive, and includes brakes (though brakes are listed as a covered component elsewhere in the brochure), repairs covered by recalls, insurance, or if the vehicle is within any warranty, repairs caused by "improper unreasonable use," "fixed (non-moving) body parts," and "structural underbody framework."

39.     In essence, Defendant's PremiumCARE marketing materials confusingly state that "with PremiumCARE, it's covered," but also that PremiumCARE covers only those repairs that are not excluded.

## FACTS SPECIFIC TO PLAINTIFF

40.     Plaintiff purchased a new 2015 Ford Explorer in January 2015.

41.     Accordingly, the Extended Corrosion Warranty on Plaintiff's 2015 Ford does not expire until January 2020.

42.     Additionally, when she purchased her Explorer in January 2015, Plaintiff also purchased Defendant's PremiumCARE ESP for 6 years or 75,000 miles for a price of $1,377.36. As part of her PremiumCARE purchase, Plaintiff was merely provided with Defendant's marketing brochure and was only required to complete Defendant's standard ESP registration form.

43.     In early 2019, Plaintiff discovered that the paint on her Explorer's hood was bubbling—indicating that her Explorer's aluminum hood was corroding and that she was experiencing the effects of the Corrosion Defect.

44.     On February 19, 2019, shortly after she discovered the Corrosion Defect, Plaintiff brought her Explorer to the Ford dealership where she bought it – Landers Ford in Collierville, Tennessee – in order to have her corrosion damage repaired.

45.     Plaintiff believed that her corrosion damage was covered by her Ford New Vehicle Warranty, and, if not, her PremiumCare ESP.

46.     Even though Plaintiff's Explorer was still within the Extended Corrosion Warranty, and Plaintiff's PremiumCARE ESP was still active, the dealership refused to repair Plaintiff's corrosion damage because it considered her warranty coverage to be expired and the damage not to be covered by the PremiumCARE ESP. On information and belief, Landers Ford refused to repair Plaintiff's corrosion damage because her aluminum hood had not perforated completely, and considered the corrosion damage outside the scope of the PremiumCARE ESP.

47.     The paint bubbling and other effects of the Corrosion Defect on Plaintiff's Ford Explorer have resulted in a significant decrease in its resale value. The decreased value, and the money needed to even attempt to remedy the problem, is greater than simply the cost of a new paint job, because the underlying defect in the aluminum hood would cause any new paint to bubble as well.

48.     Plaintiff would not have purchased the Ford Explorer, or would have paid significantly less for it, had she known that it contained the Corrosion Defect and would suffer from significant rust and corrosion. Additionally, Plaintiff would not have purchased Defendant's PremiumCARE ESP had she known that it would not cover a latent defect such as the Corrosion Defect, or would have paid significantly less for it.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff brings this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff seeks to represent the following national class ("Class") and two subclasses ("Subclasses") as follows:

> The Class: All persons in the United States and its territories who, within the applicable statute of limitations period, and as shown by Defendant's records, purchased or leased a new or used Ford Explorer.

> The Ford PremiumCARE ESP Subclass: All persons in the United States and its territories who, within the applicable statute of limitations period, and as shown by Defendant's records, (1) purchased or leased a new or used Ford Explorer and (2) purchased a Ford PremiumCARE Extended Service Plan.

> The Tennessee Subclass: All Tennessee residents who, within the applicable statute of limitations period, and as shown by Defendant's records, purchased or leased a new or used Ford Explorer.

50.     Plaintiff's claims are typical of those of the other Class and Subclass members. If each Class and Subclass member were to bring their claims in a separate, individual action, such individual claims would require proof of many of the same facts, would seek the same relief, and would rely upon the same theories of recovery.

51.     Plaintiff will fairly and adequately represent the interests of the other members of the Class and Subclass. Plaintiff's counsel has substantial experience prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to zealously prosecuting this action on behalf of the other Class and Subclass members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class or Subclass.

52.     Absent this suit proceeding as a class action, most members of the Class and Subclass would find the cost of litigating their individual claims to be prohibitively expensive and would not be able to obtain any effective remedy for their damages. Treating common questions of law and fact on a class wide basis is superior to multiple individual actions because doing so would conserve the courts' resources, as well as the resources of the parties, and would promote consistency and efficiency of adjudication.

53.     Defendant has acted and failed to act on grounds applicable to both Plaintiff and the other members of the Class and Subclass, necessitating the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

54.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class and Subclass are the same, causing injury to Plaintiff and to all of the other members of the Class and Subclass. Plaintiff and the other members of the Class and Subclass have all suffered harm and damages due to the unlawful and wrongful conduct of Defendant.

55.     Ford brand vehicles are some of the most popular vehicles sold in the United States, and the Ford Explorer (Plaintiff's model vehicle) is one of Defendant's flagship models. Defendant sells thousands of Ford Explorers every month, and upon information and belief, there are tens of thousands of members of the Class and at least hundreds of members of each Subclass, such that joinder of all members is impracticable.

56.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any

questions that may affect individual members of the Class and Subclass. Common questions for

the Class and Subclass include, but are not limited to, the following:

(a) Did Defendant manufacture, distribute, supply, market, and/or sell Ford Explorer vehicles?

(b) Was there a latent Corrosion Defect in the aluminum body panels contained in the Ford Explorers manufactured, distributed, supplied, marketed, and/or sold by Defendant?

(c) Did Defendant warrant or otherwise represent that its vehicles would be free from the Corrosion Defect experienced by the Class and Subclass members?

(d) Did Defendant continue to manufacture, market, distribute, supply, and sell vehicles with the Corrosion Defect even after becoming aware of such defect?

(e) Does the presence of the Corrosion Defect constitute a breach of warranty?

(f) Does Defendant's PremiumCARE Extended Service Plan comply with the requirements of the Magnuson-Moss Warranty Act?

(g) Are Plaintiff and the other Class and Subclass members entitled to monetary, restitutionary, and/or injunctive relief or other remedies, and, if so, what should be the nature of such remedies?

**COUNT I: Violation of 15 U.S.C. § 2301, *et seq.* (the Magnuson-Moss Warranty Act)**
**(on behalf of Plaintiff and the Class)**

57.     Plaintiff incorporates by reference all preceding allegations as though fully set

forth herein.

58.     Plaintiff and the other Class members are "consumers" within the meaning of 15

U.S.C. § 2301(3).

59.     Defendant is a "supplier" and "warrantor" within the meanings of sections 15

U.S.C. § 2301(4)-(5).

60.     The defective Ford Explorer vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

61.     A consumer damaged by a warrantor's noncompliance with an implied warranty has a cause of action pursuant to 15 U.S.C. § 2310(d)(1).

62.     Each Ford Explorer vehicle purchased by the Class members came with an implied warranty of merchantability such that each vehicle was warranted to be of merchantable quality, would pass without objection in the trade, and fit for the ordinary purposes for which it was to be used.

63.     Plaintiff and the other Class members each contracted with Defendant to purchase Ford Explorer vehicles, and the purchase price paid by Plaintiff and the Class members constituted substantial consideration for the vehicles.

64.     In connection with the purchase or lease of the defective Ford Explorers, and as detailed above, Defendant provided Plaintiff and Class members with a "New Vehicle Limited Warranty" covering defects in materials and workmanship of the Ford Explorer for three years or 36,000 miles, and an Extended Corrosion Warranty covering corrosion damage relating to such defects for a period of two additional years, both of which are covered under 15 U.S.C. §2301(6).

65.     Defendant breached its warranties, as described in more detail herein, and is therefore liable to Plaintiff and Class members pursuant to 15 U.S.C. §2310(d)(1). Without limitation, the Ford Explorer vehicles share a common design and/or manufacturing Corrosion Defect in that the vehicles are defectively designed and built with a propensity to cause their body to prematurely corrode and their exterior paint to bubble, flake, peel, and/or rust.

66.     The problem with Defendant's Extended Corrosion Warranty is that it is impossible for aluminum body panels to perforate—a fact known to Defendant for years. Therefore, Defendant has tacitly admitted that the Ford Explorers suffer from a Corrosion Defect of its own making, but Defendant's refusal to fully cover repairs and acknowledge the Corrosion Defect in order to inform current and future purchasers and lessees of Ford Explorers is woefully insufficient.

67.     At the time of sale, Defendant knew of the Corrosion Defect, knew that Defendant's Ford Explorer vehicles were unfit for driving, and given the substantial and material alterations to the vehicles' appearance and significant risk of corrosion and damage to the body of the vehicle, Defendant knew such vehicles were materially different and inferior than the vehicles consumers believed they had purchased.

68.     Defendant's breach of warranty deprived Plaintiff and the Class members of the benefit of their bargain with Defendant, as the quality, durability, and appearance of the vehicles' aluminum hood, along with the vehicles' ability to withstand corrosion, were material to their purchasing decisions.

69.     In its capacity as a warrantor, Defendant had knowledge of the inherent Corrosion Defect in the Ford Explorer vehicles.

70.     Defendant failed to effectively remedy the breach as to Plaintiff and, despite being aware of the defective aluminum hoods and being informed of the defect by numerous other Class and Subclass members, Defendant has failed to provide any reasonable remedy. Under these circumstances, any requirement for other Class members to provide Defendant any further reasonable opportunity to cure its breach of the implied warranty should be deemed satisfied and fully excused.

71.     Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiff has been appointed Class Representative. As a proximate and foreseeable result of Defendant's breach of warranty, Plaintiff and the Class members have and/or will sustain damages and loss. These damages include, inter alia: the decrease in resale value of their vehicles resulting from the Corrosion Defect, including color fading, peeling/delamination, and increased rust and corrosion; expectation damages as a result of Plaintiff and the Class members having been denied the benefit of the bargain they agreed to with Defendant; and any further monetary or other damages that Plaintiff and the Class members have incurred and/or will incur in order to effectively remedy their vehicles' aluminum hood-related problems.

72.     The amount in controversy of Plaintiff's individual claims meets or exceeds $25 in value, and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

73.     Given the latent nature of the Corrosion Defect and Defendant's concealment of the defect, any limitations period that would otherwise bar the claims of Plaintiff or the other Class or Subclass members should be tolled. Additionally, Plaintiff and the Class members continue to suffer a violation of their legally protected interests each day that Defendant fails to remedy the defect and make them whole.

**COUNT II: Violation of 15 U.S.C. § 2301, *et seq.* (the Magnuson-Moss Warranty Act)**
**(On behalf of Plaintiff and the Ford PremiumCARE ESP Subclass)**

74.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

75.     Defendant's PremiumCARE ESP is a "service contract" within the meaning of 15 U.S.C. § 2301(8).

76.     The Magnuson-Moss Warranty Act requires that "the terms and conditions of service contracts shall be fully, clearly, and conspicuously disclosed" in "simple and readily understood language." 15 U.S.C. § 2306(a)–(b).

77.     Additionally, in 2015 the Federal Trade Commission, the agency responsible for issuing interpretations of the Magnuson-Moss Warranty Act, specifically stated that the Act "prohibits service contract providers from failing to clearly and conspicuously disclose material terms and conditions or otherwise deceiving consumers with respect to the scope and nature of service contracts."[1]

78.     As described herein, Defendant's marketing materials regarding its PremiumCARE ESP do not fully disclose the scope and nature of the service contract, fail to clearly and conspicuously disclose the service contract's material terms and conditions, and otherwise deceive consumers regarding the full scope of the service contract.

79.     Defendant has violated the Magnuson-Moss Warranty Act's requirements by:

    a)      Failing to disclose the full extent of its PremiumCARE ESP's coverage;

    b)      Failing to disclose its PremiumCARE ESP in terms readily understood by consumers;

    c)      Failing to clearly and conspicuously disclose, in readily understood language, which components, parts, and repairs are and are not covered by the PremiumCARE ESP; and

    d)      Deceiving consumers with respect to the scope of the PremiumCARE ESP by touting its expansive coverage in prominently-displayed large font but then listing components not covered only in smaller "fine print" elsewhere.

---

[1] *See* Final Action Concerning Review of Interpretations of Magnuson-Moss Warranty Act; Rule Governing Disclosure of Written Warranty Terms; Rule Governing Informal Dispute Settlement Procedures; and Guides for the Advertising of Warranties and Guarantees, 80 Fed. Reg. 42,710, 42,717 (July 20, 2015).

80.     Defendant's failures to comply with the Magnuson-Moss Warranty Act's requirements have damaged Plaintiff and the Ford PremiumCARE ESP Subclass members, such that they have a cause of action under 15 U.S.C. § 2310(d).

81.     Had Defendant properly disclosed the true scope and material terms of its PremiumCARE ESP to Plaintiff and the Ford PremiumCARE ESP Subclass members, they would have chosen not to purchase the PremiumCARE ESP, or would have paid substantially less for it. This is especially true in light of Defendant's failure to properly disclose the underlying Corrosion Defect. As a direct and proximate result of Defendant's failures, Plaintiff and the Ford PremiumCARE ESP Subclass members have been damaged in amounts to be proven at trial.

82.      With regards to Plaintiff, Defendant and/or its agents have had ample opportunity to remedy the failures described above.

83.     Under 15 U.S.C. § 2310(e), notice of Defendant's violations of 15 U.S.C. § 2306(a)–(b) need not be provided until after Plaintiff has been appointed Class Representative. As a proximate and foreseeable result of Defendant's breach of warranty, Plaintiff and the Ford PremiumCARE ESP Subclass members have and/or will sustain damages and loss, including but not limited to the decreased value of the PremiumCare ESP.

84.     The amount in controversy of Plaintiff's individual claims meets or exceeds $25 in value, and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

### COUNT III: Breach of Implied Warranty of Merchantability
**(on behalf of Plaintiff and the Class and Tennessee Subclass)**

85.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

86.     Plaintiff and the Class and Subclass members each contracted with Defendant, through its dealer-agents and its related entities, to purchase Ford Explorer vehicles, and the purchase price paid by Plaintiff and the Class and Subclass members constituted substantial consideration for the vehicles.

87.     The Ford Explorer vehicles purchased by Plaintiff and the Class and Subclass members contained the inherent, latent Corrosion Defect that existed at the time the vehicles left the hands of Defendant.

88.     Defendant breached the implied warranty of merchantability that was provided by Defendant to each vehicle owner, as the Ford Explorer vehicles purchased by Plaintiff and the Class and Subclass members were not fit for the ordinary purposes for which they were to be used. The purchased vehicles were objectively unreasonable and would not pass inspection as conforming goods within the trade, because at the time of sale they had defective aluminum hoods that quickly corrode and cause their overlaying paint layer to bubble, peel, and/or blister, and will cause rust and corrosion, during the lifetime of the vehicle.

89.     The Corrosion Defect in Defendant's Ford Explorer vehicles is the direct and proximate cause of the damages and losses incurred, and/or to be incurred, by Plaintiff and the Class and Subclass members in an amount to be determined at trial. These damages include, inter alia: the decrease in resale value of the vehicles resulting from the Corrosion Defect, increased rust and corrosion and the paint layer bubbling, peeling, and/or blistering; expectation damages as a result of Plaintiff and the Class and Subclass members being denied the benefit of the bargain they agreed to with Defendant; and any further monetary or other damages that Plaintiff and the Class and Subclass members have incurred and/or will incur in order to effectively remedy their vehicles' problems related to the Corrosion Defect.

90.     Given the latent nature of the Corrosion Defect and Defendant's concealment of the defect, any limitations period that would otherwise bar the claims of Plaintiff or the Class or Subclass members should be tolled. Additionally, Plaintiff and the Class and Subclass members continue to suffer a violation of their legally protected interests each day that Defendant fails to remedy the defect and make them whole.

**COUNT IV: Breach of Express Warranty**
**(on behalf of Plaintiff and the Class and Tennessee Subclass)**

91.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

92.     In connection with the purchase or lease of Plaintiff's and the Class and Subclass members' Ford Explorers, as detailed above, Defendant provided Plaintiff and the Class and Subclass members with a warranty covering defects in material and workmanship for three years or 36,000 miles, and an extended warranty covering corrosion damage relating to such defects for two additional years.

93.     Defendant's warranties were a basis of the bargain reached when Plaintiff and the Class and Subclass members purchased or leased their Ford Explorers.

94.     Defendant breached its express warranties by (a) knowingly providing Plaintiff and the Class and Subclass members with Ford Explorers that Defendant knew contained the Corrosion Defect; (b) failing to repair or replace Plaintiff's and the Class and Subclass members' Ford Explorers at no cost within the warranty; (c) ignoring and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to Defendant's representations.

95.     Plaintiff and the Class and Subclass members have given Defendant several years of reasonable opportunity to cure its breach of express warranty, or else were not required to do so because any such opportunity to cure would be futile.

96.     These damages include, inter alia: the decrease in resale value of the vehicles resulting from the Corrosion Defect, increased rust and corrosion and the paint layer bubbling, peeling, and/or blistering; expectation damages as a result of Plaintiff and the Class and Subclass members being denied the benefit of the bargain they agreed to with Defendant; and any further monetary or other damages that Plaintiff and the Class and Subclass members have incurred and/or will incur in order to effectively remedy their vehicles' problems related to the Corrosion Defect. Defendant has been provided notice of the issues raised in this Count, as detailed above.

97.     Given the latent nature of the Corrosion Defect and Defendant's concealment of the defect, any limitations period that would otherwise bar the claims of Plaintiff or the Class or Subclass members should be tolled

### COUNT IV: Fraudulent Concealment
### (on behalf of Plaintiff and the Class and Tennessee Subclass)

98.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

99.     Defendant intentionally misrepresented, concealed, omitted, and/or suppressed material facts concerning the quality of its Ford Explorer vehicles and the design and production processes, including those of aluminum hoods, used thereon, as well as the existence of the Corrosion Defect from Plaintiff and the Class and Tennessee Subclass members.

100.    Despite advertising its Ford Explorer vehicles as durable and being of high quality, Defendant knew when it manufactured, marketed, and sold or leased the Ford Explorer vehicles that the design and/or production processes used thereon suffered from a design and/or

manufacturing defect that reduced the Ford Explorer vehicles' value and subjected the Ford Explorer vehicles to premature corrosion that causes the Ford Explorer vehicles' exterior paint to bubble, flake, peel, and/or rust.

101.    Defendant failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Ford Explorer vehicles and Defendant knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit. Through its active concealment and/or suppression of these material facts, Defendant sought to increase consumer confidence in the Ford Explorer vehicles, and to falsely assure purchasers lessees of the same that the Ford Explorer vehicles were of sound quality and that Ford was a reputable manufacturer that stands behind the automobiles it manufactures. Ford engaged in this behavior to protect its profits, avoid warranty replacements, and avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

102.    Defendant intended to induce Plaintiff and the Class and Tennessee Subclass members to purchase its Ford Explorer vehicles and to purchase them at a higher price than Plaintiff and the Class and Tennessee Subclass members would have paid had the defect been disclosed, and Defendant continues to misrepresent, conceal and/or omit material facts in an effort to avoid being responsible for remedying the Corrosion Defect. When confronted by consumers with complaints regarding the Corrosion Defect, Defendant developed and implemented a concerted plan to respond with denial, refusing to appropriately fix any of the vehicles.

103.    Defendant had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Corrosion Defect because:

23

(i)     Defendant had exclusive or far superior knowledge of the Corrosion Defect and concealment thereof, given that it and/or its agents designed and manufactured the aluminum hoods of the vehicles and manufactured, distributed, and/or supplied the vehicles to consumers;

(ii)     Defendant knew the facts regarding the Corrosion Defect, and the concealment thereof was known and/or accessible only to Defendant;

(iii)     Defendant knew that Plaintiff and the Class and Tennessee Subclass members did not know about, or could not reasonably discover, the Corrosion Defect and concealment thereof; and

(iv)     Defendant made representations and assurances about the qualities of the Ford Explorer vehicles and about the existence of a repair for the Corrosion Defect.

104.     These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Ford Explorer vehicles, and because they substantially reduced the value of the Ford Explorer vehicles purchased or leased by Plaintiff and Class and Subclass members. Whether the Ford Explorer vehicles were defective or were durable and of sound quality, and whether Ford stood behind such Ford Explorer vehicles, would have been an important factor in Plaintiff's and the Class and Subclass members' decisions to purchase or lease the Ford Explorer vehicles. Plaintiff and Class and Subclass members trusted Ford not to sell them vehicles that were defective and significantly overpriced.

105.     Defendant intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Ford Explorer vehicles were free from known defects, as represented by Ford and reasonably expected by consumers. Plaintiff and the Class and Subclass members were unaware of these omitted material facts and would have paid less for the

Ford Explorer vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts.

106.    Plaintiff and the Class and Subclass members did not receive the benefit of their bargain due to Defendant's fraudulent concealment. Plaintiff's and the Class and Subclass members' actions in purchasing the Ford Explorer vehicles were justified because Defendant was in exclusive control of the material facts concerning the Corrosion Defect, and such facts were not known or reasonably knowable to the public, Plaintiff, or Class or Subclass members.

107.    Plaintiff and the Class and Subclass members relied to their detriment upon Defendant's fraudulent misrepresentations and material omissions regarding the quality, durability, and high resale value of the Ford Explorer vehicles.

108.    As a direct and proximate result of Ford's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiff and the Class and Subclass members suffered injury. They purchased and leased Ford Explorer vehicles that had a diminished value by reason of Defendant's concealment of, and failure to disclose, the Corrosion Defect.

109.    Accordingly, Defendant is liable to Plaintiff and the Class and Subclass for their damages in an amount to be proven at trial.

110.    On information and belief, Defendant has still not made full and adequate disclosure and continues to defraud Plaintiff and the Class and Subclass members. Defendant also continues to conceal material information regarding the Corrosion Defect.

111.    Defendant's wrongful acts alleged herein were intentional and malicious and were taken with the intent to mislead and defraud. As such, Plaintiff and the Class and Subclass members are entitled to punitive and exemplary damages.

## COUNT V: Unjust Enrichment
### (on behalf of Plaintiff and the Class and Tennessee Subclass)

112.    Plaintiff incorporates by reference Paragraphs 1 through 56 as though fully set forth herein.

113.    Plaintiff brings this unjust enrichment claim in the alternative, to the extent the Court finds that there was no express or implied warranties or contracts between Plaintiff and/or the Class and Subclass members, on the one hand, and Defendant, on the other hand.

114.    Defendant has received millions of dollars in revenue from the sale of the Ford Explorer vehicles between 2014 and 2019.

115.    This revenue was a benefit conferred upon Defendant by Plaintiff and the Class and Subclass members.

116.    Defendant manufactured, marketed, and sold defective Ford Explorer vehicles to Plaintiff and Class and Subclass members, while actively concealing the vehicles' known defects and touting their quality, durability, and high resale value.

117.    Defendant knew of the Corrosion Defect in its Ford Explorer vehicles at the time the vehicles were distributed to Ford dealerships and at the time the vehicles were sold to Plaintiff and the Class and Subclass members.

118.    Despite having knowledge of the Corrosion Defect, Defendant failed to disclose the existence of the defect to Plaintiff and the Class and Subclass members at or prior to the time of the sale of the vehicles and has failed to conduct any product recall or otherwise notify purchasers or potential purchasers of the defect.

119.    As a result of its failure or refusal to disclose the existence of the Corrosion Defect, as set forth above, Defendant was able to, and did, charge a higher price for its Ford Explorer vehicles than what the vehicles' true value should have been, such that Defendant

obtained monies that rightfully belong to Plaintiff and the Class and Subclass members. Defendant has received a measurable benefit as a result of its wrongful practices.

120.    Plaintiff and the Class and Subclass members elected to purchase or lease the Ford Explorer vehicles based on Defendant's misrepresentations, deception, and omissions. Defendant knew and understood that it would (and did) receive a financial benefit, and voluntarily accepted the same, from Plaintiff and the Class and Subclass members when they elected to purchase or lease the Ford Explorer vehicles.

121.    The Ford Explorer vehicles' Corrosion Defect, and Ford's concealment of the same, enriched Ford beyond its legal rights by securing through deceit and falsehood millions of dollars in revenues.

122.    Ford accepted and retained non-gratuitous benefits conferred by Plaintiff and the Class and Subclass members, who, without knowledge of the defect, paid a higher price for their Ford Explorer vehicles than their actual lower value. Plaintiff and the Class and Subclass members did not confer these benefits officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain these wrongfully-obtained profits.

123.    Therefore, because Ford will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiff and each Class and Subclass member are entitled to recover the amount by which Ford was unjustly enriched at his or her expense.

124.    Plaintiff and the Class and Subclass members are therefore entitled to restitution in an amount to be determined at trial.

125.    Accordingly, Plaintiff, on behalf of herself and each Class and Subclass member, seeks damages against Ford in the amounts by which it has been unjustly enriched at Plaintiff's

and each Class and Subclass member's expense, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendant for the following relief:

1.    An order certifying the Class and/or Subclasses as defined above;

2.    A declaration that Defendant breached its implied warranties, both through Magnuson-Moss and through common law, to Plaintiff and the Class and/or Subclass members;

3.    Notification to all Class and/or Subclass members about the Corrosion Defect and Defendant's inaccurate and incomplete representations;

4.    An order awarding to Plaintiff and the Class and/or Subclasses actual, compensatory, and punitive damages, as proven at trial;

5.    An order awarding Plaintiff and the Class and/or Subclass members restitution, disgorgement, or such other equitable relief as the Court deems proper;

6.    An order awarding to Plaintiff and the Class and/or Subclasses of reasonable attorneys' fees, costs, and pre- and post-judgment interest;

7.    An injunction barring Defendant from continuing to distribute, supply, market, and sell its Ford Explorer vehicles containing the Corrosion Defect as fit for their ordinary purposes until Defendant has remedied the defects complained of; and

8.    An award to Plaintiff and the Class and/or Subclasses of such other and further relief as may be determined to be just, equitable, and proper by this Court.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable in this action.

Dated: August 19, 2019

Respectfully submitted,

TAYLOR CAVETTE, individually and on
behalf of a class of similarly situated
individuals

By: /s/ Edwin E. Wallis III
    *One of Plaintiff's Attorneys*

ROBERT A. COX (TN #14279)
EDWIN E. WALLIS III (TN #23950)
Glassman, Wyatt, Tuttle & Cox, P.C.
26 North Second Street
Memphis, TN 38103
Tel: 901-527-4673
Fax: 901-527-5320
Email: rcox@gwtclaw.com
Email: ewallis@gwtclaw.com


Myles McGuire (*pro hac vice to be filed*)
Evan M. Meyers (*pro hac vice to be filed*)
Timothy P. Kingsbury (*pro hac vice to be filed*)
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com

*Counsel for Plaintiff and the putative Class
members*